1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARCHEX SALES, INC.,

            Plaintiff,

    v.

ADMINISTRADORA DE MARCAS Y
FRANQUICIAS, S.A. DE C.V.,

            Defendant.

No.

**COMPLAINT FOR DECLARATORY
RELIEF OF NON-INFRINGEMENT AND
LAWFUL USE OF THE
&lt;PRICESHOES.COM&gt; DOMAIN NAME**

16  Pursuant to 15 U.S.C. § 1114(2)(D)(v), Marchex Sales, Inc. ("Marchex") seeks

17 declaratory relief, as set forth below, to establish that its registration and use of the domain

18 name &lt;priceshoes.com&gt; (the "Domain Name") is lawful under the Anticybersquatting

19 Consumer Protection Act (15 U.S.C. § 1125(d)).

20  **I.  NATURE OF THE CASE**

21  1.  This is an action for declaratory relief to establish that Marchex's registration of

22 the Domain Name (*i.e.,* &lt;priceshoes.com&gt;) is lawful under the Anticybersquatting Consumer

23 Protection Act ("ACPA") and does not violate defendant Administradora de Marcas y

24 Franquicias, S.A. de C.V.'s ("Defendant") rights thereunder.

25  2.  Marchex is a leading mobile and online advertising company that drives

26 millions of consumers to connect with businesses.  Part of its strategy is to maintain a sizeable

COMPLAINT - 1

portfolio of domain names comprising simple words, short phrases, and other descriptive or common terms for the purpose of providing keyword advertising in relation to the words in the domain name.  One of these domain names is <priceshoes.com>, which allows third parties to advertise shoes, among other things, so that customers can price shoes (*i.e.,* compare the cost of different brands of shoes).

3.   A business entity from another country has decided to try to exploit the <priceshoes.com> domain name.  Although Defendant has registered the wordmark "price shoes" in Mexico, it has not attempted to do the same in the United States.  This is for good reason.  While the term "price" has no meaning in Spanish, one of uses of the word in English is as an intransitive verb meaning "to discover how much something costs" and is frequently used to describe the act of comparison shopping.  Hence, the phrase "price shoes" can be understood in English as an imperative or invitational phrase directly descriptive of comparison shopping for shoes.  The meaning of this phrase may not have been apparent to the relevant Mexican authority, but it would be difficult or impossible to convince the United States Office of Patent and Trademark that these words—"price" and "shoes"—together are entitled to trademark protection.  Instead, Defendant chose to increase the chances of obtaining a valid trademark from the United States Office of Patent and Trademark by registering a logo containing a stylized version of the words "price shoes" set inside an oval.

4.   Undeterred by the fact that it has no legitimate claim to the Domain Name, Defendant filed a claim under the Uniform Domain-Name Dispute Resolution Policy ("UDRP") with the World Intellectual Property Organization Arbitration and Mediation Center ("WIPO").  Two members of the three-member WIPO arbitration panel (the "WIPO Panel") conflated Defendant's rights in the words "price shoes" in Mexico with its lesser rights in the United States and wrongly found that Marchex's registration of the Domain Name was done in bad faith.  The Panel ordered Marchex to transfer the Domain Name to Defendant, subject, of course, to a permitted legal challenge (i.e., this lawsuit).

COMPLAINT - 2

5.     If left to stand, Defendant's actions, which constitute reverse domain name hijacking, threaten to rob Marchex of its legitimately obtained Domain Name.  Marchex brings this action to confirm its rights in the Domain Name and prevent its transfer to Defendant.

## II.  JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because plaintiff seeks a declaration, pursuant to 15 U.S.C. § 1114(2)(D)(v) and 28 U.S.C. § 2201, that its registration and use of the domain name <priceshoes.com> does not violate Defendant's rights under the ACPA.

7.     This Court has personal jurisdiction over Defendant because Defendant agreed to submit to the jurisdiction of this Court when it initiated an administrative proceeding under the UDRP with the WIPO concerning the Domain Name.  Specifically, by seeking arbitration under UDRP, Defendant submitted to jurisdiction in the place where the registrar for the Domain Name is located, which is at 5808 Lake Washington Boulevard NE, Suite 300, Kirkland, Washington, 98033.

8.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) because the Domain Name registrar is located in Kirkland, Washington, which is in this judicial district.

## III.  THE PARTIES

9.     Plaintiff Marchex is a wholly owned subsidiary of Marchex Inc., a leading mobile and online advertising company that drives millions of consumers to connect with businesses.  Marchex's principal place of business is in Las Vegas, Nevada.  Marchex maintains a sizeable portfolio of domain names comprising simple words, short phrases, and other descriptive or common terms for the purpose of providing keyword advertising in relation to the words in the domain name.

10.     Defendant Administradora de Marcas y Franquicias, S.A. de C.V. handles the intellectual property portfolio of Price Shoes, S.A. de C.V., a catalog-based sales company, incorporated in Mexico, which sells a variety of goods, including shoes.  Defendant's principal

COMPLAINT - 3

1  place of business is in Mexico City.

2  **IV.  FACTS**

3  11.  Defendant submitted evidence to the WIPO Panel showing that it had registered

4  the words "PRICE SHOES" as a mark in Mexico.  However, while the significance of that

5  phrase may not have been apparent to the Instituto Mexicano de la Propiedad Industrial, the

6  phrase "PRICE SHOES" can be understood in English as a description of comparison shopping

7  for shoes.

8  12.  Not surprisingly, Defendant has not registered the words "PRICE SHOES" with

9  the United States Office of Patent and Trademark.  Instead, on September 6, 2011, Defendant

10  registered the following logo:

11
12  
13
14

15  See U.S. Trademark Reg. No. 4022619; see also U.S. Trademark Reg. No. 4022624 (same logo

16  but with blue color, registered on the same day).

17  13.  It appears Defendant made a deliberate decision to apply for registration of the

18  logo in the United States, instead of attempting to register the word mark per se.

19  14.  Combining the words "PRICE" and "SHOES" is not distinctive.  The word

20  "PRICE" is commonly used in connection with shoes and retail services for shoes in the United

21  States.

22  *Marchex's Registration and Use of the Hijacked Domain Name*

23  15.  The Domain Name <priceshoes.com> was registered on June 5, 2003 by a third

24  party.  On March 11, 2005—more than ***six years before*** Defendant registered its price shoes

25  logo in the United States—Marchex purchased this domain name in a batch acquisition along

26  with a number of other domain names comprising simple words, short phrases, and other

COMPLAINT - 4

descriptive or common terms for the purpose of providing keyword advertising in relation to the words in the domain name.

16.     Marchex has continually used the Domain Name for comparative shoe advertising in the United States since 2005.

17.     When Marchex purchased the Domain Name, Marchex was not aware of any third party with rights in "Price Shoes" or "priceshoes.com."  Indeed, at the time of purchase, Marchex knew that the Domain Name had been registered to another party for two years without complaint or notice of a claim from any other party.

18.     Marchex registered the Domain Name with an intention to propagate a website therefrom and not to profit from any third party's good will in a mark similar or identical to the Domain Name.

### *Marchex's Registration and Use of the Domain Name is Not Unlawful under the ACPA*

19.     Marchex neither registered nor used the Domain Name in bad faith.

20.     Marchex maintains a sizeable portfolio of domain names comprising simple words, short phrases, and other descriptive or common terms for the purpose of providing keyword advertising in relation to the words in the domain name.  Marchex does not set out to intentionally target trade or service marks.  Rather, Marchex seeks out domain names that use common words and phrases so that more people generally browsing the internet will come across its websites.

21.     When Marchex acquires domain names, it regularly reviews the names against registered U.S. trademarks.  A search of the United States Patent and Trademark Office records in 2005, when Marchex purchased the Domain Name, would not have indicated that any party had a right in "PRICE SHOES".  Indeed, a search today would only indicate that in 2011 Defendant registered a *logo* that contains the words "price" and "shoes."  Given the generic nature of the phrase "price shoes," Marchex would have been surprised to find that the United States Patent and Trademark Office had deemed these two words entitled to trademark

COMPLAINT - 5

1    protection.  Moreover, the phrase "price shoes" is not distinctive or famous.

2    *The UDRP Action to Hijack the Domain Name*

3    22.    On January 20, 2011, Marcos Schatz, CEO of Price Shoes, S.A. de C.V., sent an

4    offer to Marchex for $1,000 for the domain name.  Marchex responded that the initial bid for

5    the domain name had to be in the mid to high five figure range.  Mr. Schatz responded with an

6    offer to purchase the domain name for $10,000.  Marchex informed Mr. Schatz that the offer

7    needed to be in the $75,000 range.  Mr. Schatz responded, "thats [sic] funny but no thanks,

8    when you're open for a negotiation let me know."  When Marchex received this offer, it had no

9    idea that Mr. Schatz was the CEO of Price Shoes, S.A. de C.V.  Indeed Mr. Schatz did not

10   identify himself or his company.  Mr. Schatz did not indicate that he believed his company had

11   a right to this Domain Name.

12   23.    On August 3, 2012, after its attempt to purchase the Domain Name failed,

13   Defendant initiated proceedings to have the Domain Name transferred to it by filing a

14   complaint with WIPO under UDRP.

15   24.    WIPO assigned a panel of three to decide this issue (the "WIPO Panel").  In a

16   split decision, two of the three WIPO Panel members agreed with Defendant and ordered that

17   the disputed domain name <priceshoes.com> be transferred to Defendant.  The third WIPO

18   Panel member disagreed, finding that Marchex had shown a right or legitimate interest in the

19   Domain Name.

20   25.    The WIPO Panel's dissenting opinion points out that the majority opinion

21   undervalued the fact that "price shoes" is a generic or descriptive term using dictionary words

22   that are common together:

23           That evidence establishes that the Respondent [Marchex], in choosing its domain
24           name, has used two English words with clear and established meanings.  In
             combination, in a domain name, they mean that it will lead to a website where
25           shoes may be priced and the prices compared.  The majority express the view that
             this interpretation is 'plausible' and 'debatable', although I myself would say that
26           it is well established and for [sic] the reasons given above.

COMPLAINT - 6

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 ! Tel: 206.839.4800

26.     The WIPO Panel's majority opinion also erred by conflating Defendant's registration in Mexico with its registration in the United States.  Defendant has not registered a word mark in the United States, and its registration of the logo came more than six years after Marchex purchased the Domain Name.

27.     The WIPO Panel majority further erred by finding that Marchex does not use the Domain Name for a website where shoes may be priced and prices compared.  As the WIPO Panel's dissent points out, the WIPO Panel majority wrongly focused on whether there were any links on the website that are unrelated to shoes, whereas it should have focused on whether the website is in substance and reality a website about the price of shoes.  The WIPO Panel's dissent correctly states: "My examination of the site leads me to the conclusion that it is a website devoted principally and in substance to one subject, namely shoes, the price of shoes, the comparison between brands of shoes and the process of buying them."

28.     Under UDRP, the Internet Corporation for Assigned Names and Numbers ("ICANN") will transfer the Domain Name to Defendant unless legal action is commenced against Defendant by November 28, 2012 (i.e., within ten business days of the date of the arbitration decision, November 13, 2012).

### *Defendant Has Notice of this Action*

29.     Contemporaneous with the filing of this Complaint with the Court, plaintiff's attorneys have provided notice of the same by email to Defendant and Defendant's authorized representative, as provided in Defendant's UDRP Complaint.

30.     This Complaint and a properly issued Summons shall be served upon Defendant in due course.

## V.  FIRST CAUSE OF ACTION
## REVERSE DOMAIN NAME HIJACKING
### 15 U.S.C. § 1114(2)(D)(v)

31.     Marchex incorporates the allegations set forth in paragraphs 1–30 above as though fully set forth herein.

COMPLAINT - 7

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 ! Tel: 206.839.4800

32.     Through the passage of the Anticybersquatting Consumer Protection Act, Congress amended 15 U.S.C. § 1114 to establish a right to relief against an overreaching trademark owner seeking to take ownership of domain names that have not been registered or used in violation of the trademark owner's rights.   This practice is colloquially known as "reverse domain name hijacking."

33.     Marchex is the domain name registrant for the <priceshoes.com> domain name.

34.      The Domain Name will be transferred to Defendant pursuant to the Panel's decision unless this Court rules otherwise.

35.     Defendant has notice of this action by service or otherwise.

36.     Marchex's registration or use of the Domain Name does not violate Defendant's rights under the APCA.   In registering the Domain Name, Marchex did not have "bad faith intent," as provided in 15 U.S.C. § 1125(d)(1)(A)(i), to profit from Defendant's alleged trademark.    At the time Marchex registered the Domain Name, the mark was neither "distinctive" nor "famous" as provided under 15 U.S.C. § 1125(d)(1)(A)(ii).   Marchex had reasonable grounds to believe that its registration and/or use of the Domain Name was a fair use or otherwise lawful, as provided in 15 U.S.C. §1125(d)(1)(B)(ii).

37.     Accordingly, this Court should prevent Defendant from reverse name hijacking pursuant to 15 U.S.C. § 1114(2)(D)(v) and order that the Domain Name not be transferred to Defendant.

## VI.  SECOND CAUSE OF ACTION
## DECLARATORY RELIEF—28 U.S.C. § 2201
## NO VIOLATION OF THE ACPA

38.     Marchex incorporates the allegations set forth in paragraphs 1–37 above as though fully set forth herein.

39.     There is an actual controversy with respect to whether Defendant is entitled to transfer of the Domain Name based on Defendant's rights under the ACPA.

40.     At the time Marchex registered the Domain Name, the words "price shoes" were

COMPLAINT - 8

1    neither "distinctive" nor "famous" as provided under 15 U.S.C. § 1125(d)(1)(A)(ii).

2          41.    In registering the Domain Name, Marchex did not have "bad faith intent," as

3    provided in 15 U.S.C. § 1125(d)(1)(A)(i), to profit from Defendant's trademark.

4          42.    Defendant does not have a trademark in the words "price shoes" registered with

5    the United States Office of Patent and Trademark.

6          43.    Marchex had reasonable grounds to believe that its registration and/or use of the

7    Domain Name was a fair use or otherwise lawful, as provided in 15 U.S.C. §1125(d)(1)(B)(ii).

8          44.    Marchex's registration or use of the Domain Name does not violate Defendant's

9    rights under the APCA.

10                          **VII.  RELIEF REQUESTED**

11         WHEREFORE, plaintiff Marchex requests the following relief:

12         A.    A judgment declaring that Marchex's registration and use of the Domain Name

13   does not violate Defendant's rights under the Anticybersquatting Consumer Protection Act, 15

14   U.S.C. § 1125(d).

15         B.    A judgment that Marchex is not required to transfer the registration for the

16   Domain Name to Defendant.

17         C.    A judgment prohibiting Defendant from taking any further action with respect to

18   the transfer of the Domain Name.

19         E.    Award to Marchex of its costs and attorney's fees.

20         F.    That the Court grant such other, further, and different relief as the Court deems

21   proper under the circumstances.

22

23

24

25

26

COMPLAINT - 9

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 ! Tel: 206.839.4800

1     Dated this 27th day of November, 2012.

2

3

4                                    _s/ Stellman Keehnel_
                                     _s/ Katherine A. Heaton_
5                                    Stellman Keehnel, WSBA No. 9309
                                     Katherine A. Heaton, WSBA No. 44075
6                                    DLA PIPER LLP (US)
                                     701 Fifth Avenue, Suite 7000
7                                    Seattle, WA  98104-7044
                                     Tel:  206.839.4800
8                                    Fax:  206.839.4801
                                     E-mail:  stellman.keehnel@dlapiper.com
9                                    Email:  katherine.heaton@dlapiper.com

10
                                     Attorneys for plaintiff Marchex Sales, Inc.
11

12    WEST\239727999.1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT - 10